**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Samuel Swoopes, | ) | CV-93-471-TUC-DCB |
| Petitioner, | ) | |
| v. | ) | |
| Charles L. Ryan, et al., | ) | **ORDER** |
| Respondents. | ) | |

This matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b) and the local rules of practice of this Court for a Report and Recommendation (R&R) on the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. In the R&R, the Magistrate Judge recommends to the Court that the amended petition should be denied and the action should be dismissed. Before the Court is the Magistrate Judge's R&R, Petitioner's Objections and Respondent's Response to the Objections. Having conducted a de novo review, this Court will adopt the Report and Recommendation in its entirety, deny the amended habeas petition and dismiss this action.

**STANDARDS OF REVIEW**

When objection is made to the findings and recommendation of a magistrate judge, the district court must conduct a de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

On habeas review, a state court's findings of fact are entitled to a presumption of correctness when fairly supported by the record.

*Wainwright v. Witt,* 469 U.S. 412, 426 (1985). The presumption of correctness also applies to a state appellate court's findings of fact. *Sumner v. Mata,* 449 U.S. 539, 546 (1981). The question presented in a state prisoner's petition for a writ of habeas corpus is "whether the state proceedings satisfied due process." *Jammal v. Van de Kamp,* 926 F.2d 918, 919-20 (9th Cir.1991).

Federal courts may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *Reed v. Farley,* 512 U.S. 339 (1994). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated the petitioner's Fourteenth Amendment right to due process. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Bonin v. Calderon,* 77 F.3d 1155, 1158 (9th Cir.1996). The Supreme Court has held in the habeas context that "this Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). The provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose special burdens. *Chein v. Shumsky,* 373 F.3d 978, 983 (9th Cir.2004) (en banc). Under AEDPA, when reviewing a state criminal conviction, a federal court may grant a writ of habeas corpus only if a state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In considering whether a state court has unreasonably applied Supreme Court precedent, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *Bell v. Cone,* 535 U.S. 685, 694 (2002). In conducting habeas review, we "presum[e] that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002).

## SUMMARY

The Court will adopt the thorough and complete Summary of the Case in the R&R, as follows:

Swoopes was convicted after a jury trial of "first-degree burglary, sexual assault, aggravated robbery, three counts of armed robbery, and three counts of kidnapping." [doc. # 150, p. 2] The trial court imposed

3

a combined sentence totaling 42 years. *Id.* At trial, the state presented evidence that Swoopes and two accomplices committed an armed home invasion. [doc. # 150, p. 2] Swoopes was the only one of the three whose face was uncovered. [doc. # 154, p. 3] The main issue at trial was identification. Swoopes' accomplices have never been identified.

Swoopes, the gunman, ordered the victims, a married couple and their male guest, to lie down on the floor of the living room under a blanket. *Arizona v. Swoopes*, 155 Ariz. 432, 433, 747 P.2d 593, 594 (App. 1987); [doc. # 154, p. 3]. After the victims were robbed of their money and jewelry, the robbers proceeded to ransack the house. *Id.* [At] one point, one of the robbers took the wife into the bedroom and sexually assaulted her. *Id.* Swoopes remained in the living room to keep the husband and friend from interfering. *Id.*

Approximately five minutes after the wife was taken away, the guest decided to escape and summon help. [doc. 150, Exhibit C, p. 158] He fought his way outside, broke free from two of the intruders, and ran for help. *Id.*, pp. 158-160. He noticed a vehicle parked just adjacent to the house. *Id.*, p. 167. The vehicle was gone two or three minutes later when he returned to the house. *Id.*, p. 168.

When the husband heard the sounds of the struggle, he got off the floor and ran to the front door intending to lock the intruders out and again confronted Swoopes, who was standing in the doorway. *Id.*, p. 119. When Swoopes left, the husband locked the door and went to check on his wife. *Id.*, pp. 121-122. After determining that she was safe, he ran outside and saw the robbers drive away in a mid to late '60s light colored Plymouth Valiant. *Id.*, pp. 123-124 After the robbery, the three victims were unable to clearly describe the gunman and failed to identify Swoopes in a photographic lineup. *Arizona v. Swoopes*, 216 Ariz. 390, 393, 166 P.3d 945, 948 (App. 2007). None of the victims reported the gunman as having any facial blemishes or scars. *Id.* It is undisputed that Swoopes has a scar above his right eye.

Sixteen months after the robbery, the husband and his friend learned that a similar home invasion occurred in their neighborhood on that same night and a suspect in that crime was currently on trial. *Id.*; [doc. # 154, p. 3] The two men went to the courthouse and recognized Swoopes as the man who robbed them. *Swoopes*, 216 Ariz. at 393, 166 P.3d at 948. The police then arranged a live lineup for the wife, who identified Swoopes explaining she was looking for a man with a facial scar. *Id.*

At trial, the three victims identified Swoopes as the gunman. *Id.* On cross examination, the wife admitted that after the robbery she did not tell police the gunman had a scar. [doc. # 150, Exhibit C, p. 228-230] She was not specifically asked if she ever told police the gunman had a *blemish*. During his closing argument, Swoopes' counsel reminded the jury that the wife admitted that she told detectives the gunman had no scars. [doc. # 150, Exhibit D, p. 119] He argued, this was strong evidence that her later identification of Swoopes was erroneous.

4

The prosecutor tried to address this inconsistency in his rebuttal closing. He conceded that the wife did not tell detectives the gunman had a scar, but argued her identification was nevertheless accurate because her memory was refreshed when she saw Swoopes in the physical lineup.

During deliberations, the jury sent a written question to the trial judge asking to see "any statement made by [the wife] of a blemish before the physical lineup." *Swoopes*, 216 Ariz. 390, 393, 166 P.3d 945, 948. The court responded that "the statement is not admissible" and further instructed the jurors to "rely on their collective memories." *Id*. It is undisputed that the wife did not make a statement about a blemish to the police immediately after the robbery.

After the trial and sentencing, Swoopes filed a direct appeal arguing (1) "the court erred in imposing consecutive sentences," (2) "the court erred in convicting him of sexual assault as an accomplice, and (3) "the victims' in-court identification of him was tainted." *Arizona v. Swoopes*, 155 Ariz. 432, 434, 747 P.2d 593, 596 (App. 1987); [doc. # 150, p. 2, n. 1] During the briefing process, the appeal was inadvertently transferred to the Arizona Supreme Court before being returned to the court of appeals. [doc. # 11, p. 3, n. 3] During this period, Swoopes filed a supplemental brief arguing (4) the prosecutor engaged in misconduct, (5) the court erred in instructing the jury on the issue of identification evidence, (6) the state improperly excluded counsel from the trial lineup, and (7) the aggravated robbery conviction violated double jeopardy. [doc. # 11, p. 3, n. 3]; [doc. # 150, p. 2, n. 1] The court of appeals refused to entertain the additional claims. *Id.*; [doc. # 7, p. 5, n.1] On July 21, 1987, the court of appeals affirmed Swoopes' convictions and sentences in *Arizona v. Swoopes*, 155 Ariz.432, 747 P.2d 593 (App 1987) (*Swoopes I*). The Arizona Supreme Court denied review on January 13, 1988. [doc. # 150, p. 2]

In his first post-conviction relief petition, filed on February 1, 1989, Swoopes argued (1) trial counsel was ineffective for failing to investigate the alleged getaway car, (2) the trial court erred in its instruction to the jury about identification evidence, (3) he was denied counsel at all critical stages, (4) the prosecutor engaged in misconduct at trial and suppressed evidence, (5) the sentence was unconstitutional, and (6) he was denied due process and equal protection. [doc # 142, p. 4] The trial court denied the petition on July 17, 1990. [doc. # 142, p. 4] The court of appeals denied Swoopes' petition for review on February 21, 1991. [doc. # 150, p. 3] On February 21, 1991, Swoopes filed a special action in the court of appeals raising the same issues presented in his first post-conviction relief petition and arguing the trial court erred procedurally and substantively in denying his petition. [doc. # 142, p. 5.] The court of appeals denied the special action on April 18, 1991, and the Arizona Supreme Court denied a petition for review on September 27, 1991. *Id*.

On July 26, 1993, Swoopes filed in this court his original Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.) He claimed (1) the victims' in-court identification of him was tainted, (2) his due process and equal protection rights were

violated by misconduct before the grand jury, (3) the trial court committed error at trial and in regard to a stipulation, (4) the prosecutor engaged in misconduct in part by withholding exculpatory evidence, (5) trial and appellate counsel were ineffective, and (6) his sentences violated the Double Jeopardy Clause. [doc. # 1, pp. 5-7]; [doc. # 150, pp. 3-4, n. 3]

This court denied claim (1) on the merits and found the remaining claims procedurally defaulted. [doc. # 150, pp. 4-5]. The Ninth Circuit affirmed in *Swoopes v. Sublett*, 163 F.3d 607 (9th Cir. 1998) (*Swoopes II*). The Supreme Court vacated *Swoopes II* and remanded in light of the recently decided *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999). *Swoopes v. Sublett*, 527 U.S. 1001, 119 S.Ct. 2335 (1999). On remand, the Ninth Circuit held that an ordinary habeas petitioner in Arizona exhausts his claims by presenting them to the court of appeals. *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999) (*Swoopes III*), *cert. Denied*, 529 U.S. 1124 (2000). The Ninth Circuit remanded the case for this court to "determine which claims were properly exhausted, and not procedurally barred, and issue a decision on the merits of those claims." [doc. # 150, p. 5]

After a new round of briefing, Swoopes filed a motion to stay the petition and pursue discovery, which was granted by this court. [doc. # 150, pp. 5-6] By this point, Swoopes' counsel had discovered in the file the trial court's response to the jury's mid-deliberation question.

Swoopes returned to state court and filed a second post-conviction relief petition1 on March 27, 2003. [doc. # 142, p. 5] He argued (1) the trial court erred procedurally and substantively in its response to the jury question, (2) trial and appellate counsel were ineffective in their response to the jury question issue, and (3)(a) the state violated *Brady* by failing to disclose evidence that another suspect was connected to the getaway car and (3)(b) the state failed to preserve or destroyed evidence favorable to his defense. *Id.*, pp. 6-7. The trial court granted relief on the ineffective assistance claim and ordered a new trial. [doc. # 137, Exhibit B]; *Arizona v. Swoopes*, 216 Ariz. 390, 393, 166 P.3d 945, 948 (App. 2007) (*Swoopes IV*). On September 19, 2007, the court of appeals reversed the trial court concluding that Swoopes' claims were precluded, not eligible for any of the preclusion exceptions, and not of sufficient [footnote omitted] constitutional magnitude that they could not be waived implicitly. *Swoopes IV*. The Arizona Supreme Court denied review on June 3, 2008. [doc. # 150, p. 7] On September 22, 2009, Swoopes filed in this court his amended Petition for Writ of Habeas Corpus, which combines certain claims from his original habeas petition with claims newly raised in his second post-conviction relief petition. He claims (I) his due process rights were violated "by the trial court's use of unduly suggestive and unreliable identification at trial," (II) "the trial judge erred procedurally and substantively in his response to a [mid-deliberation] jury question," [footnote omitted] (III) his right to due process and equal protection was violated by prosecutorial misconduct; and (IV) trial counsel and appellate counsel were ineffective. [doc. # 142].

(R&R at 2-6.)

On November 30, 2009, Respondents filed a Response to the amended Petition for Writ of Habeas Corpus. On January 28, 2010, Petitioner filed a Reply to the Response, pursuant to Rule 5 of the Rules Governing Section 2254 Cases. On March 22, 2010, the Magistrate Judge issued a Report and Recommendation that the amended petition may be denied on the merits. (Doc. 157.)  On July 30, 2011, Petitioner's Objections were filed. (Doc. 163, 164.) On August 13, 2010, Respondents filed a Response to the Petitioner's Objections. (Doc. 165.) On August 19, 2010, Petitioner filed a Reply to the Respondents' Response, which is not contemplated by the rules governing Section 2254 cases or reports and recommendations at Fed.R.Civ.P. 72, and no leave of Court was requested. This Reply was stricken and Petitioner then filed a Motion for Reconsideration on September 29, 2010.  (Doc. 168.)

**PETITIONER'S OBJECTIONS**

**A. The Magistrate Court Wrongly Denied Petitioner's Claim that the Trial Judge's Response to the Jury's Mid-Deliberation Question Was Prejudicial Error Because: (1) the State Post-Convictions Court's Findings Underlying Its Ruling – i.e., that the Trial Court Responded Incorrectly and Prejudicially to a Pivotal Jury Question – Are Supported By The Record and Must Be Deferred To; and, (2) the Trial Judge's Response to the Jury's Mid-Deliberation Question Was an Ex Parte Communication.**

These Objections address the recommendation contained in the R&R, as follows:

In claim (II), Swoopes argues "the trial judge erred procedurally and substantively in his response to a mid-deliberation jury question" [doc. # 142, p. 9]

First, Swoopes claims that when the jury sent out its question during deliberations, the judge improperly communicated with the jury ex parte without consulting Swoopes' attorney. [doc. # 142, p. 9]; [doc. # 1, memorandum, pp. 22-24] The respondents concede this claim is timely, but they argue it is procedurally defaulted. [doc. # 150, pp. 9, 21-22]

When Swoopes raised this claim in his second post-conviction proceeding, the state appellate court found the claim precluded pursuant to Ariz.R.Crim.P. 32.2. *Arizona v. Swoopes*, 216 Ariz. 390, 166 P.3d 945 (App 2008). A procedural bar imposed by the state below precludes federal review only if it is adequate to support the judgment and independent of federal law. *Thomas v. Goldsmith*, 979 F.2d 746, 749 (9th Cir. 1992). A procedural bar is adequate if it was "firmly established and regularly followed" at the time of the default. *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997), *cert. Denied*, 523 U.S. 1132 (1998). Here, the default occurred when Swoopes failed to raise this claim in his direct appeal or first postconviction relief petition. *Id.*, at 760-61. Because procedural default is an affirmative defense, the respondents have the burden to show the state's procedural bar is adequate and independent of federal law. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005).

In this case, the state court's procedural bar was not firmly established and regularly followed at the time of the default. The state court found Swoopes' claim precluded after applying the *current* version of Rule 32.2. *See Arizona v. Swoopes*, 216 Ariz. 390, 397 (App. 2007) (*Swoopes IV*). This version, which dates from 1992, did not apply at the time of Swoopes' default because that default occurred before 1992, when the previous version of the rule was in existence. *Id.* Accordingly, the court concludes the procedural bar applied by the court of appeals (the new rule) was not firmly established and regularly followed at the time of the default (when the previous version of the rule applied). *See Scott v. Schriro*, 567 F.3d 573, 580-82 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 1014 (2009); *Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999) ("[T]he 1995 amendments do not constitute an 'adequate' state law ground for procedural default purposes if they did not exist at the time of the default."), *cert. Denied*, 531 U.S. 838 (2000).

Addressing the claim on the merits, the court concludes Swoopes is not entitled to relief. Swoopes cannot show as a matter of fact that the judge engaged in ex parte communications.

Swoopes raised this claim in his second post-conviction relief petition. He submitted an affidavit from his trial counsel who stated that he had no recollection of the jury's note or the judge's response but asserted if he had seen the response, he would have objected because it was misleading. *Arizona v. Swoopes*, 216 Ariz. 390, 395 (App. 2007). The state court concluded that Swoopes' evidence amounted to no more than a mere speculation that the judge engaged in ex parte communications. *Id.* Because it was customary for the judge to contact counsel off the record in such circumstances, the state court found that the judge probably did just that and simply failed to make a subsequent record. *Id.* The court will "presume that the state court's findings of historical fact are correct and defer to those findings in the absence of convincing evidence to the contrary or a demonstrated lack of fair support in the record." *Mayfield v. Woodford*, 270 F.3d 915, 922 (9th Cir. 2001).

Swoopes cannot show as a matter of fact that the judge engaged in ex parte communications. Accordingly, this claim should be denied.

Swoopes further argues the trial court should have "brought the jury into open court in his and his attorney's presence and presented it with the crucial and true evidence about [the wife's] unreliable identification (in part by "holding the '*Dessureault*' hearing in the presence of the jury) that was needed to answer the jury's concern about the reliability of the identification." [doc. # 142, p. 9] In support of this claim, Swoopes cites *Rushen v. Spain*, 464 U.S. 114 (1983) and *State v. Werring*, 523 P.2d 499 (1974). [doc. # 119, p. 7]

The gravamen of Swoopes' claim is not immediately apparent. *Rushen* and *Werring* hold that the due process clause may be implicated if the trial court responds to a jury's [mid-deliberation] question without allowing counsel to participate. Neither holds that the court is obliged to supply the jury with additional evidence whenever the jury requests it. In *Dessureault*, the Arizona Supreme Court discussed certain procedures the trial court should employ if there is an issue as to the admissibility of a witness's identification. *Arizona v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. Denied*, 397 U.S. 965 (1970). Among other things, the court held that "if at the trial the proposed in-court identification is challenged, the trial judge must immediately hold a hearing in the *absence* of the jury to determine from clear and convincing evidence whether it contained unduly suggestive circumstances." *Id.*, p. 384, 955 (emphasis added). *Dessureault* does not support Swoopes' claim either. *See also Watkins v. Sowders*, 449 U.S. 341, 349 (1981) (Due process does not always require the trial judge to conduct a hearing outside the presence of the jury when identification evidence is at issue.).

Swoopes cannot show that the trial court's failure to hold an evidentiary hearing in response to the jury's mid-deliberation question violated his Constitutional rights. The claim should be denied.

Swoopes further argues the court substantively erred when it returned to the jury an answer that was misleading.

The respondents argue this claim is untimely because it was not included in the original petition, and the amended petition was filed after the applicable one-year limitation period. *See* 28 U.S.C. § 2244(d)(1). This issue was decided by the Ninth Circuit only after briefing on the petition was concluded. Where the original habeas petition was filed before the AEDPA effective date, the AEDPA's one-year limitation period does not apply to the case at all, even to an amended petition filed after the effective date. *Smith v. Mahoney*, __ F.3d __, 2010 WL 744271 * 12 .

As the court stated above, the state court's finding of preclusion does not bar federal review. Nevertheless, the court finds the claim fails on the merits.

A habeas petitioner complaining of trial error is entitled to relief only if he can show the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 63, 113 S.Ct. 1710, 1722 (1993). Swoopes cannot show the trial court's response had such an effect or influence.

9

When the jury asked in mid-deliberation if the wife made any statement about a blemish before the physical lineup, the trial court responded that "the statement is inadmissible." *Swoopes*, 216 Ariz. 390, 393, 166 P.3d 945, 948 (App. 2007). Thus, the jury was told two things: (1) the wife made a statement, and (2) that statement was not admissible.

The jury, however, was instructed to find the facts based only on the evidence presented at trial. [doc. # 150, Exhibit D, p. 141] Evidence, the jury was told, consists of the testimony of the witnesses and exhibits. *Id*. An inadmissible statement is not evidence. Accordingly, the wife's "statement" about a blemish was not evidence and would not have been considered by the jury in their determination of the facts. Because a jury is presumed to follow its instructions, the court must conclude the trial judge's response to the jury's mid-deliberation question did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722 (1993); *see also Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 733 (2000) ("A jury is presumed to follow its instructions." "Similarly, a jury is presumed to understand a judge's answer to its question.").

Moreover, even if the trial judge's response caused the wife's identification testimony to be improperly bolstered, relief is not available in light of the remaining evidence against Swoopes. The husband testified that he was sober and clear-headed the night of the robbery, and he had no difficulty seeing the gunman's face. [doc. # 150, Exhibit C, pp. 108, 95, 97] While he conceded he did not pick Swoopes out of the photo lineup, he said he had no problem recognizing Swoopes in the flesh. *Id*., p. 132. He testified there was no question in his mind that Swoopes was the gunman. *Id*., pp. 133, 142.

The friend testified that while he may have had a couple of beers, he was not in any way under the influence the night of the robbery. *Id*., pp. 145, 146. The lighting was adequate, and he had no trouble seeing the gunman's face. *Id*., pp.149, 150, 161. He failed to pick Swoopes out of a photo lineup, but he had no trouble recognizing Swoopes in the courthouse. [doc. # 150, pp. 164, 165; Exhibit D, p. 50] He had no doubt that Swoopes was the gunman. [doc. # 150, Exhibit C, pp. 186,87]

The state also presented evidence connecting Swoopes to the vehicle used the night of the robbery. At some point, Swoopes was arrested for a traffic violation. [doc. # 150, Exhibit D, pp. 62-63] He was driving his aunt's black over blue 4-door 1967 Chrysler, license number: TBT 387. *Id*. He said he lived with his aunt at 2115 North Avenida El Capitan. *Id*. Detective Skuta testified that he went to this address and saw outside the residence the '67 Chrysler and a Plymouth Valiant. [doc. # 150, Exhibit D, pp. 27-28] The Chrysler's licence plate was on the Valiant. *Id*. The husband and friend testified that the 4-door Valiant looked like the vehicle used by the robbers. [doc. # 150, Exhibit C, pp. 166-68, 188-89]

Even without the wife's testimony, there was compelling evidence that Swoopes was the gunman. The trial judge's response to the jury's mid-

deliberation question did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Swoopes further argues the effect of the erroneous response as magnified by the prosecutor's statements during his rebuttal closing. The court finds that the prosecutor's closing argument was somewhat misleading but not as prejudicial as Swoopes argues.

During his closing argument, Swoopes' counsel reminded the jury that the wife told detectives the gunman had no scars. [doc. # 150, Exhibit D, p. 119] He argued, this was strong evidence that her later identification of Swoopes was erroneous.

The prosecutor tried to address this inconsistency in his rebuttal closing. He conceded the wife told detectives the gunman had no scars, but argued her identification was nevertheless accurate because her memory was refreshed when she saw Swoopes in the physical lineup. His rebuttal closing reads in pertinent part as follows:

> And then it's very nice, the lady's in the hospital, she has been there for a couple hours, she's been through hell and some officer is trying to get some statements, did he look this way, did he have a scar, no, no, about five foot seven or eight, same weight, same color, same size, she said on that witness stand, how many of you listened to her? You all did, You all did. The word blemish kept coming up. She saw a blemish on his face. The guy is asking about a scar and she's probably doped up at that time, as indicated. And you are going to walsh [sic] him out of the Courtroom. You know, when you see a person face to face, your memory gets refreshed. When you see that person, it hits you that that's the person. That's it.

> . . . Then when a defense attorney gets you on the witness stand, and put yourselves in the shoes of these victims, here, naturally, any tiny discrepance, blemish versus scar, any thing will be picked on and hammered out. My God in heaven she did not get her Polaroid out and photograph it. Her mind did though. And sure, 1:00 o'clock in the morning, when she's sedated and exhausted and in shock, she may not have mentioned the scar. Her memory was refreshed when she saw him. . . . And they did not commit perjury in this Courtroom. You should resent being told that.

> Now they told the police that very night about this scar. That very day about that scar. Let me ask you this question. Because this is the whole thing when you come right down to it. It isn't the rhetoric, and it isn't the did you see a mole on someone's chin, did you see a scratch here, do you see a pox mark on the forehead, did you see that, it's the totalitarity [sic] of the person how he looks, when you see him, his size; . . . As she said on the witness stand, and

she told Detective Skuta, it wasn't just a blemish, it
wasn't just a scar, it was all these things when I saw him
with a gun and I had a chance to see him, that's the man.
. . .

[doc. 150, Exhibit D, pp. 133- 36]

According to Swoopes, the prosecutor falsely stated that the wife told
detectives immediately after the robbery that the gunman had a blemish.
The court does not agree. The prosecutor did make certain statements
about a blemish. He said: "The word blemish kept coming up." "She saw a
blemish on his face." *Id.* He never stated, however, that she told the
police the gunman had a blemish.

The meaning of these blemish statements is open to debate. Before the
statements, the prosecutor discussed the wife's testimony at trial.
Accordingly, the blemish statements may refer to the wife's admission at
trial that she recognized Swoopes in the lineup in part by his scar.

Immediately after making the blemish statements, however, the prosecutor
discussed the wife's interview at the hospital after the robbery. He
stated: "The guy is asking about a scar and she's probably doped up at
that time, as indicated." *Id.* Accordingly, the prosecutor may have been
suggesting the wife saw a blemish but did not mention it because she was
medicated at the time. Regardless of which of these interpretations is
correct, however, the court concludes the prosecutor never improperly
told the jury that the wife told police the gunman had a blemish
immediately after the robbery.

More problematic, however, are the prosecutor's following statements:
"Now they told the police that very night about this scar." "That very
day about that scar." [doc. # 150, Exhibit D, p. 136] These statements
are also something of a mystery. Immediately after the robbery, the
witnesses did not tell police the gunman had a scar. The prosecutor
conceded in his closing that the wife did not mention the scar and
explained in detail why her identification was nevertheless reliable.
Accordingly, it is unlikely that the prosecutor would deliberately
misrepresent the trial evidence, and simultaneously undermine his own
closing argument by asserting the exact opposite. The respondents suggest
the prosecutor was referring to a later time when the witnesses
recognized Swoopes and told the detectives about their respective
identifications. [doc. # 150, pp. 29-30, n. 8] This is a plausible theory
considering that the prosecutor's statements immediately following deal
with the process of identification.

But regardless of what these statements mean, the court concludes they
did not convince the jury that the wife told detectives about the scar
immediately after the robbery. If they had believed that, then they would
have had no reason to send out their mid-deliberation jury question
asking if the wife made any statements about a blemish. Their question
makes sense only if they believed the wife made no statements about a
*scar* but might have made one about a *blemish* instead.

12

The rebuttal closing was not a model of clarity, but the prosecutor did not falsely tell the jury that the wife described the gunman as having a blemish or a scar immediately after the robbery. It is possible that the jury inferred from his argument that the wife's concession that she did not mention a scar to the police did not foreclose the possibility that she mentioned a blemish instead. This would explain the jury's mid-deliberation question.

The court concludes that the trial court's response to the mid-deliberation jury question, in light of all the trial proceedings, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Swoopes argues this court should defer to the determination of the state court that the trial court's error was not harmless. The court however must apply the pre-AEDPA standard of review, which requires us to review mixed questions of law and fact de novo. The determination of whether a trial error was harmless or not is a mixed question of law and fact reviewed de novo. *McKenzie v. Risley*, 842 F.2d 1525, 1531 (9th Cir. 1988), *cert. denied*, 488 U.S. 901 (1988). Accordingly, this court may not defer to the state court's resolution of this issue.

(R&R at 9 - 16.)

## RULING

The Objections added nothing new to this claim that have not already been addressed completely and accurately by the R&R and through-out these proceedings. The Court finds no error in the Magistrate Judge's analysis of the law. Both the trial court and the Arizona Court of Appeals found that Petitioner failed to show an ex parte communication occurred. *State v. Swoopes*, 216 Ariz. 390, 394-395 (Ariz. App. 2007). The Objection is based on unsupported speculation. Viewing the totality of the evidence against Petitioner, Petitioner cannot show that the trial court's response "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *see also Rushen v. Spain*, 464 U.s. 114, 117 (1983(subject to harmless error analysis); *United States v. Madrid*, 842 F.2d 1090, 1093-94 (9th Cir. 1988)(no actual prejudice). The Court finds no unreasonable

application of established federal law. Thus, this Objection is overruled.

**B. The Magistrate Court Wrongly Denied Petitioner's Claim that the Prosecutor Violated his Due Process Rights by Failing to Disclose Clearly Exculpatory Evidence Under *Brady*.**

This Objection addresses the following excerpt from the R&R:

[Swoopes] argues the prosecutor "withheld and failed to preserve or to destroy substantially exculpatory evidence from the defense." [doc. # 142, p. 10] Specifically, Swoopes claims the prosecution failed to disclose that police suspected another man, Wigglesworth, of committing the home invasion. [doc. # 150, Exhibit A, 7-9] This claim was raised in Swoopes' second post-conviction relief petition. It is neither time-barred nor procedurally defaulted. The court concludes the claim should be denied on the merits.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The evidence is material [and reversal is required] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

Swoopes maintains the state failed to disclose a wealth of *Brady* material that would have altered the verdict had it been presented at trial. [doc. # 137, Exhibit A, pp. 9-10] Specifically, the state failed to disclose that the Plymouth Valiant, identified by the husband and friend as the getaway vehicle, was actually owned, not by Swoopes or his aunt, but by a Harold McGrew. *Id*. This McGrew did not know Swoopes and never lent him his car. *Id*. Moreover, McGrew sold the car to a Russell Clark who had been arrested for burglary at one time. *Id*. Clark in turn was associated with a John Wigglesworth, who later pleaded guilty to a home invasion robbery. *Id*. Wigglesworth drove a Ford Thunderbird and used the modus operandi of switching licence plates to avoid arrest. [doc. # 154, p. 49] Swoopes argues this Thunderbird could have been the getaway vehicle because it more closely matched the victim's original description than did the Valiant. *Id*. It is not clear how all this evidence would have benefitted Swoopes.

At trial, Swoopes' counsel argued the husband and the friend were mistaken when they identified the Valiant as the getaway car. [doc. # 150, Exhibit D, pp. 75, 126] Now, Swoopes believes counsel should have conceded that the Valiant was the getaway car but should have argued the car was associated with other possible suspects – Clark and Wigglesworth. This new line of evidence, however, does not exonerate Swoopes. Swoopes conducted his robbery with two accomplices. They have never been identified. One of them could have been Clark or Wigglesworth, does not

mean the evidence also exonerates Swoopes. They may have committed the robbery together. Moreover, if the Valiant was indeed the getaway car, the fact that the Valiant was parked in front of Swoopes' house and displayed the licence plate from Swoopes' aunt's car would have been additional circumstantial evidence of his guilt. In the alternative, Swoopes suggests his attorney should have introduced evidence that Wigglesworth's Ford Thunderbird was the getaway vehicle. Again, it is difficult to see how this alternate theory would have helped to exonerate Swoopes. If the Thunderbird was the getaway vehicle, then Wigglesworth was likely involved in the robbery. Wigglesworth, however, associated with Clark, another robbery suspect. Clark, in turn, owned the vehicle that was observed sitting in front of Swoopes' house sporting the licence plate from Swoopes' aunt's car.[Footnote omitted.] The evidence tends to prove that Swoopes knew both Clark and Wigglesworth and had access to the Ford Thunderbird.

The court does not find "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See U.S. v. Bagley*, 473 U.S. 667, 682 (1985); *but see U.S. v. Jernigan*, 492 F.3d 1050 (9th Cir. 2007) (Where bank robbery was committed by a lone, Hispanic woman, *Brady* was violated when the government failed to disclose the existence of second female, Hispanic suspect.).

Swoopes further claims his due process rights were violated when the state failed to preserve or destroyed evidence. Specifically he maintains the state failed to preserve a record of all of the proceedings below concerning his identification issue; destroyed or failed to preserve the testimony of witnesses at the *Dessureault* suppression hearing of February 3, 1986 and February 24, 1986; destroyed trial exhibits such as mug shots, photos of the physical lineup and getaway car; and destroyed physical evidence such as the rape kit, a pillowcase and blouse.[doc. # 142, p. 7]

This evidence was destroyed some time after Swoopes' direct appeal and initial postconviction relief petition. [doc. # 137, Exhibit B, ruling 3/16/06, p. 2] Nevertheless, Swoopes argues the absence of this material hampers the "litigation of his post-conviction challenges to his conviction." [doc. # 137, Exhibit A, memorandum in support of petition, p. 16] This claim was raised in Swoopes' second post-conviction relief petition. It is neither time-barred nor procedurally barred from federal review. The court concludes the claim should be denied on the merits.

In order for the state's failure to preserve evidence to violate due process the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). Moreover, if the state did not destroy the evidence in bad faith, there is no due process violation. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

The Supreme Court has never clearly held that the due process clause is implicated if the state destroys potentially exculpatory material *after* trial. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Ferguson v. Roper*, 400 F.3d 635, 638 (8th Cir. 2005), *cert. denied*, 546 U.S. 1098 (2006). The court need not decide, however, whether or not *Trombetta*, and *Youngblood* apply to Swoopes' claim because he is not entitled to relief regardless. *But see Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (The Constitution does not obligate the states to provide post-conviction relief, and if they do, the Due Process Clause does not guarantee the petitioner the same rights that would apply before trial). Swoopes has made no showing that the state destroyed this evidence in bad faith. *See* [doc. # 137, Exhibit B, ruling 3/16/06, p. 2] Accordingly, he has not shown his due process rights were violated.

(R&R at 16 - 18.)

## RULING

The Objection is repetitive of ongoing arguments and claims that have been addressed by the R&R. The Court finds no error in the analysis or application of the law. A constitutional violation arising from prosecutorial misconduct does not warrant habeas relief if the error is harmless. *See Sandoval v. Calderon,* 241 F.3d 765, 778 (9th Cir. 2000). When a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable. *See Mitchell v. Esparza,* 540 U.S. 12, 17-18 (2003) (per curiam); *Cooper v. Brown,* 510 F.3d 870, 921 (9th Cir.2007). Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. For a *Brady* claim to succeed, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks*

*v. Dretke,* 540 U.S. 668, 691(2004) (quoting *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)). "The relevant question is whether the prosecutors' [ misconduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). Assuming that is so, this Court need only decide whether the prosecutor's misconduct so tainted the trial as to violate due process and altered the result of the trial. *United States v. Bagley*, 473 U.S. 667, 682 (1985). After reading the transcript of the jury trial, the Court does not so find. The statement by the Petitioner that the State withheld evidence that was both favorable to Swoopes and material to the State's case against him and his defense is unsupported. (Objection at 28.) The Court agrees that it is not clear how the allegedly withheld evidence would have benefitted Swoopes' defense. There was no error in how the prosecutor argued identification and the getaway car; this was not an example of exploiting evidence wrongfully withheld. (Objection at 29.) This Objection is overruled.

**C. The Magistrate Court Wrongly Denied Petitioner's Claim that the Victims' Unduly Suggestive Identifications Were Sufficiently Reliable.**

This Objection is directed to this portion of the R&R:

Swoopes argues his due process rights were violated when evidence was presented at trial of an "unduly suggestive and unreliable identification at trial." [doc. # 142, p. 8] The parties agree that this claim should be addressed on the merits.

This claim was raised in the original petition, which was filed before the AEDPA's effective date, so the AEDPA standard of review does not apply. *Mayfield v. Woodford*, 270 F.3d 915, 922 (9th Cir. 2001). Pure questions of law and mixed questions of law and fact are reviewed de novo. *Id*. The court will "presume that the state court's findings of historical fact are correct and defer to those findings in the absence of convincing evidence to the contrary or a demonstrated lack of fair support in the record." *Id*. (internal punctuation removed).

Evidence presented at trial of an out-of-court identification may violate due process if the identification procedure created "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id*. [Footnote omitted.] If the court finds a pre-trial identification procedure was unnecessarily suggestive, the court proceeds to determine whether the ultimate identification was nevertheless sufficiently reliable. *Id*., at 198-99. If so, then its admission at trial did not violate due process. *Id*. "[T]he central question, [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id*. at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. at 199-200.

Assuming without deciding that the initial pre-trial identification was unnecessarily suggestive, the court concludes that under the totality of the circumstance the identification was sufficiently reliable.

The three witnesses had an "ample opportunity" to observe Swoopes during the robbery. *Arizona v. Swoopes*, 155 Ariz. 432, 435 (App. 1988); *see also Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995) ("[T]he state court's factual determinations are presumed correct."). The witnesses were not mere bystanders but were direct victims. Obviously, their degree of attention was heightened by that fact. On the other hand, the court recognizes that the stress of the robbery is a factor that could have impaired the witness's ability to accurately remember details about the gunman's face. *See, e.g., Raheem v. Kelly*, 257 F.3d 122, 138 (2nd Cir. 2001) ("[I]t is human nature for a person toward whom a gun is being pointed to focus his attention more on the gun than on the face of the person pointing it."), *cert. denied*, 534 U.S. 1118 (2002).

The accuracy of the witnesses' prior description of the suspect was at least fair. While none of the witnesses reported [footnote omitted] that the suspect had a scar above his right eye, their descriptions were not as vague as Swoopes argues. The husband described the suspect as "negro," with a "flare[d]" nose, "slender" with a "good build"- "weighed about 165." [doc. # 1, Exhibit A] He had "a mustache and maybe long sideburns." *Id*. He wore a dark coat, tan or gray pants, and "like a baseball cap" that was purple or black. *Id*. The wife described the suspect as "black," "about 5'8' or 5'9", slim figure." *Id*. He wore a black cap, brown jacket, brown pants, sneakers, and bellbottoms. *Id*. The friend described the

suspect as "a black male, approximately 5'11"," lighter colored curly hair, with "a mustache and a thin beard around his chinline," "about 155, 160 pounds," "real nervous" with "[n]o discernible accent." *Id*. He wore "dark pants" and "a maroon or purple coat or shirt." *Id*. The witnesses' descriptions vary somewhat, but they agree in the main. The degree of detail supplied by the witnesses is some evidence that they had a good look at the suspect. The degree of similarity between the witnesses' descriptions is some evidence that their descriptions were accurate.

After viewing Swoopes in court, the two men were "absolutely certain" that Swoopes was the gunman. *Arizona v. Swoopes*, 155 Ariz. 432, 433 (App. 1988). The wife later identified Swoopes at a live lineup "without being told of the positive identification by her companions." *Arizona v. Swoopes*, 155 Ariz. 432, 434-35 (App. 1988). The witnesses' degree of certainty is further evidence that the identification was reliable.

The courthouse identification, however, was made approximately 16 months after the crime. This is a considerable length of time and does not support reliability. By itself, however, this lapse of time is not dispositive. *See, e.g., U.S. v. Williams*, 596 F.2d 44, 49 (2nd Cir. 1979)("[A]lthough the time lapse of two years and eight months between the crime and the in-court confrontation is a somewhat negative factor, it is outweighed by the other four *Manson* criteria . . . ."), *cert. denied*, 442 U.S. 946 (1979). Based on the totality of the circumstances, the court concludes the identification testimony was not so unreliable that its admission violated due process.

Swoopes argues the witnesses' failure to report a scar on the face of the gunman proves their later identification of him was not sufficiently reliable. The court does not agree. It is undisputed that Swoopes has a scar above his right eye. But while this scar is plainly visible under ordinary conditions, it is not so prominent [footnote omitted] that it could not have been missed during the tense and chaotic atmosphere of an armed robbery.

Swoopes notes that the witnesses were shown a photographic lineup shortly after the robbery, and although they were shown his picture, were unable to make an identification. He argues their later identification of him was likely a recollection of seeing his photograph rather than an identification of the true gunman. The court agrees that the sequence of events is some evidence that the witnesses' identification was unreliable. However, the court does not agree that this outweighs the other factors pointing to reliability. *See U.S. v. Davenport*, 753 F.2d 1460, 1463 (9th Cir. 1985) ("The fact that Davenport was the only individual common to the photo spread and the lineup cannot, without further indicia of suggestiveness, render the lineup conducive to irreparable misidentification."); *U.S. v. Johnson*, 820 F.2d 1065, 1073 (9th Cir. 1987) (similar); *but see, e.g., Foster v. California*, 394 U.S. 440, 442-43 (1969) (Lineup procedure was unfair where the witness finally made a definitive identification after viewing a lineup, where the

defendant was the tallest of the three men and the only one wearing a leather jacket, followed by a "one-to-one confrontation" with the defendant, followed by a *second* lineup, where "[the defendant] was the only person in this lineup who had also participated in the first lineup.").

(R&R at 6-9.)

**RULING**

A pretrial hearing was held on Petitioner's motion to preclude the in-court identification pursuant to *State v. Dessureault,* 104 Ariz. 380 (1969), *cert. den.,* 397 U.S. 965 (1970). After taking the matter under advisement, the court denied the motion. The test of a witness' identification is whether or not it is reliable considering the totality of the circumstances. *State v. Castaneda,* 150 Ariz. 382 (1986). The two male victims identified Petitioner at his trial on an unrelated matter. The female victim identified Petitioner at a police lineup without being told of the positive identification by her companions. All three victims had ample opportunity to observe Petitioner during the robbery. The trial court held a *Dessureault* hearing and determined that the out-of-court identifications were not unduly suggestive.

The state court's determination that the challenged identifications were sufficiently reliable was not contrary to, or an unreasonable application of, clearly established federal law. *Neil v. Biggers*, 409 U.S. at 199. The R&R accurately and thoroughly addresses and resolves the identification issue. This Objection is overruled.

**D. The Magistrate Court Wrongly Denied Petitioner's Claim that the Prosecutor Engaged in Misconduct By Injecting Racism into His Trial.**

Petitioner takes issue with the R&R's recommendation that his claim of racism at trial be denied, as follows:

20

Swoopes further argues the prosecutor engaged in misconduct by the introduction of "racially charged evidence and comments." [doc. # 142, p. 10] The state concedes this claim is timely and was properly exhausted. [doc. # 150, pp. 9, 17, 36] Because guilty verdicts must be based on "solid evidence, not upon appeals to emotion," a prosecutor's attempt to improperly inflame the passions of the jury by appealing to racial or ethnic stereotypes may violate the defendant's Constitutional right to due process. *Kelly v. Stone*, 514 F.2d 18, 19 (9th Cir. 1975); *Bains v. Cambra*, 204 F.3d 964, 974-75 (9th Cir. 2000), *cert. denied*, 531 U.S. 1037 (2000). A habeas petitioner complaining of trial error is entitled to relief, however, only if he can show the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Bains*, 204 F.3d at 977-78.

At trial, the prosecutor elicited testimony from the wife about the circumstances of the sexual assault. At some point during the crime, one of the robbers pulled the wife off the living room floor, where the victims were being held, and into the bedroom. [doc. # 150, Exhibit C, p. 208] The gunman restrained the husband telling him: "Don't be a hero or you will die and everybody in the house will die." *Id.*, p. 113. The wife testified that the robber forced her to perform fellatio and told her to act "like I like it." *Id.*, p. 210. He then asked for her name and phone number explaining it was "[b]ecause he would like to have a good white woman." *Id.* She testified she was afraid that the other men would also abuse her. *Id.*, p. 211. During his closing argument, the prosecutor described the sexual assault calling it a "[d]isgusting, reviling, revolting thing that happened to this lady." [doc. # 150, Exhibit D, p. 92] He argued that Swoopes was guilty of the sexual assault because he was an accomplice. *Id.*, p. 96-97. He explained as follows: If you aided, if you made it possible you are equally guilty. Keep cool, man. Don't be a hero, man. We are just taking your wife into the other room for a little fun. [doc. # 150, Exhibit D, p. 97] Later, the prosecutor described the sexual assault saying: What did he tell her to do? Act like you enjoy it. Get an Oscar for that one. Act like you enjoy it. And then what happens? Give me your phone number and she's scared to death, she gives it, the phone number is right there on the phone anyway. She doesn't want to get hurt any worse. Anymore. I would like a nice white lady to fuck. Sure, Okay. [doc. # 150, Exhibit D, p. 103] Toward the end of his argument, the prosecutor asserted that "this lady and this man and their friend . . . have been through hell because of this defendant." *Id.*, p. 138. He urged the jury to "put an end to her nightmare" and "[s]how her that the truth still exists" and "that justice exists." *Id.*, p. 139. Swoopes argues that none of this testimony was relevant and it was introduced into the trial for the sole purpose of inflaming the racial prejudices of the jury. [doc. # 154, p. 72] The court does not agree.

Testimony establishing the sexual assault and Swoopes' actions facilitating the assault were necessary to prove the elements of the offence. The state asserted Swoopes was guilty of sexual assault as an accomplice. The state therefore was required to prove Swoopes "knowingly and with criminal intent participat[ed], associat[ed], or concur[ed] with

another in the commission of [the rape]. *Arizona v. Swoopes*, 155 Ariz. 432, 434 (App. 1987). It was therefore relevant that the rape occurred, that Swoopes knew of his accomplice's intentions, and facilitated the rape by keeping the husband from interfering.

Certainly, argument that the assailant wanted the wife's phone number because he wanted a "nice white lady to fuck" raised the specter of certain racial prejudices that could have been used to improperly influence the jury. [doc. # 150, Exhibit D., p. 103] Here, however, it cannot be said that the prosecutor dwelt improperly on the racial overtones of the assault. First, the prosecutor's presentation stuck fairly faithfully to the actual words of the robbers. He did embellish them to some extent, but primarily he stuck to the actual testimony. It would be ironic to find that a prosecutor committed misconduct by repeating in court the very words used by the perpetrators during the underlying crime. *See, e.g., Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir. 2002) ("Finally, given the eyewitness testimony about what Fields did to Cobb, there is no reasonable probability that the prosecutor's emotional appeal affected the verdict."), amended by *Fields v. Woodford*, 315 F.3d 1062 (9th Cir. 2002).

Second, the court notes that the most potentially inflammatory statements were attributed, not to Swoopes, but to the robber who committed the sexual assault. Even if the jurors' passions were improperly inflamed, their anger would have been directed primarily toward the accomplice, not Swoopes. Swoopes, in fact, stopped the assault from escalating by telling his accomplice that it was time to leave. Moreover, the prosecutor discussed the sexual assault primarily in racially neutral terms. The prosecutor's discussion was by no means mild. He used words and phrases obviously calculated to emphasize the degradation of the underlying crime. He called the assault, for example, a "[d]isgusting, reviling, revolting thing." His language, however, did not reference the race of the parties. He did not use the type of racially loaded terms and argument that courts have previously found to violate the Constitution. *See, e.g., Bains v. Cambra,* 204 F.3d 964, 975 (9th Cir. 2000) ("Here, the prosecutor relied upon clearly and concededly objectionable arguments for the stated purpose of showing that all Sikh persons (and thus Bains by extension) are irresistibly predisposed to violence when a family member has been dishonored . . . ."); *Kelly v. Stone*, 514 F.2d 18 (9th Cir. 1975) ("Because maybe the next time it won't be a little black girl from the other side of the tracks; maybe it will be somebody that you know . . . ."); *Miller v. State of N.C.;* 583 F.2d 701, 704 (1978) ("[The prosecutor] repeatedly referred to the defendants as "these black men" and ultimately argued that a defense based on consent was inherently untenable because no white woman would ever consent to having sexual relations with a black."). Finally, the trial court offered instructions to the jury that should have lessened whatever prejudicial influence the prosecutor's arguments might have had. The jury was specifically instructed that it was to find the facts from the evidence presented in court. [doc. # 150, Exhibit D, p. 140] It was instructed not to be influenced by sympathy or prejudice. *Id.*, p. 140. Moreover, it was instructed that the arguments made by the lawyers are not evidence, but should be considered only if they help the jury members

understand the law and the evidence. *Id.*, p. 142; *see also Id.*, pp. 94, 131 (where the prosecutor repeated these instructions to the jury).

Assuming the prosecutor's comments were improper, Swoopes cannot show they "had a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see, e.g., Moore v. Morton*, 255 F.3d 95, 114, n. 16 (3rd Cir. 2001) (collecting cases); *but see, e.g., Kelly v. Stone*, 514 F.2d 18, 19 (9th Cir. 1975).

(R&R at 19 - 22.)

## Ruling

The prosecutor's comments at issue were fact based, derived from the victim's testimony at trial. In recommending denial of this claim, the R&R engages in a very thorough analysis of not just the evidence presented at trial relating to this matter, but also the potential impact it had on the jury. Based on its factual analysis, the R&R correctly concludes that Petitioner fails to show that the comments at issue, if improper, had a substantial or injurious effect or influence on the verdicts."[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Closing argument reflected testimony during the trial of the victims, including the victim that was sexually assaulted. (Tr. 210-211.) The prosecutor did not make a personal opinion commentary. This Objection is overruled.

**E. The Magistrate Court Wrongly Denied Petitioner's Claim that He Received Ineffective Assistance of Counsel. (Objection at 35.)**

The Objection addresses Ground Four of the R&R, as follows:

Swoopes argues his trial counsel and appellate counsel were ineffective in their handling of the mid-deliberation jury question. This issue was raised in Swoopes' second post-conviction petition in 2003. It is neither time-barred nor procedurally barred from federal review. The court concludes the claim should be denied on the merits.

23

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Swoopes challenges his conviction, he must show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal citation omitted).

First, Swoopes cannot show trial counsel's deficient performance caused the trial court to give the misleading instruction. The trial court concluded that the trial judge probably consulted counsel and then failed to properly record the incident as was the customary practice. [doc. # 137, Exhibit B, p. 3] This finding, however, does not necessarily mean that trial counsel approved the misleading instruction. As Swoopes himself notes, it is possible the trial court told counsel of the question, assured them that he would instruct the jury to rely on the evidence already presented during the trial, and then constructed the misleading instruction himself and so advised the jury. [doc. # 154, p. 41, n. 21] If this is what happened, and Swoopes has no evidence to the contrary, then trial counsel's performance was not deficient. Moreover, trial counsel's allegedly deficient performance did not cause Swoopes prejudice. As the court already explained, the instruction should not have influenced the jury's deliberation because the jury was already instructed to base its findings on the evidence presented and it was specifically instructed that the "blemish statement" was not evidence.

Moreover, the identification evidence from the husband and the friend was more than sufficient to establish Swoopes' guilt. Assuming without deciding that appellate counsel's failure to discover the judge's response in the court file was deficient performance, Swoopes cannot show prejudice. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (The petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, [he] would have prevailed on appeal."). The misleading instruction should not have influenced the jury's deliberation and identification evidence from the husband and the friend was more than sufficient to establish Swoopes' guilt.

Swoopes also claims his trial counsel was ineffective for failing to investigate the Valiant and failing to call investigator Gene Reedy regarding the wife's lineup identification. These claims were included in his original habeas petition. [doc. #1, Memorandum, pp. 32, 34] Assuming without deciding that these claims were exhausted, Swoopes cannot show trial counsel was ineffective. Assuming without deciding that trial counsel's performance was deficient in failing to investigate the Valiant, Swoopes cannot show he suffered prejudice. As the court previously discussed, Swoopes now has evidence that the Plymouth Valiant, identified by the husband and friend as the getaway vehicle, was actually owned, not by Swoopes or his aunt, but by a Harold McGrew. [doc. # 137, Exhibit A, pp. 9-10] He also has evidence that another man, John Wigglesworth, could have been the gunman in part because Wigglesworth drove a Ford Thunderbird, which Swoopes argues could have been the getaway vehicle. *Id.*, [doc. # 154, p. 49] As discussed previously, the court does not find a "reasonable probability" that had this evidence been introduced at trial, "the fact finder would have had a reasonable doubt respecting guilt." *See Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002) (Ineffective assistance of counsel claim employs the same analysis as a *Brady* claim.), *cert. Denied*, 537 U.S. 942 (2002). Swoopes cannot show his trial counsel's alleged failure to investigate the Valiant caused him prejudice. Accordingly, trial counsel was not ineffective.

Swoopes further argues trial counsel was ineffective for failing to call Gene Reedy to testify. He argues Reedy's testimony would have been relevant on the issue of suggestive identification procedures. [doc. # 52, p. 51] Reedy was an investigator who observed the conduct of the live lineup. [doc. # 150, Exhibit D, pp., 32, 33, 42] Swoopes argues Reedy would have testified that during the lineup the wife explained that she "was looking for something in particular" and when the detective asked: "What?", she responded: "A scar." [doc. # 52, p. 36] The court concludes this testimony would have been cumulative. On cross-examination, trial counsel established that, at the lineup, the wife did not make an identification right away. *Id.*, pp. 235-37. She observed Swoopes for some five minutes and then asked to have a closer look at the suspects. *Id.* She announced her identification after she had that closer look. *Id.* Immediately after the lineup, the wife made a statement to Detective Skuta memorializing her identification and the factors that lead to her identification. *Id.*, p. 240. Among other things, she said she wanted the suspects to approach the window and turn sideways because she wanted to see if any of them had a scar on the side of his face. *Id.*, p. 240. She saw such a scar on Swoopes' face near his right eye. *Id.*, p. 243. She said this scar helped her make her identification, but she also based her identification on his height, weight, and color. *Id.*, pp. 239, 243, 245.

Reedy could have testified that the wife told Detective Skuta that she wanted to have a closer look at the suspects because she was looking for a scar. This fact, however, was established by counsel during his cross-examination of the wife. Reedy's testimony would have been cumulative. Failing to offer testimony that would have been cumulative is not

prejudicial. *See Babbitt v. Calderon*, 151 F.3d 1170, 1176 (9th Cir. 1998), *cert. Denied*, 525 U.S. 1159 (1999). Accordingly, Swoopes cannot show trial counsel was ineffective.

(R&R at 22 - 26.)

**RULING**

The Report and Recommendation throughly and accurately resolved this claim. The Court can see no reason to hold an evidentiary hearing to resolve this issue. *Strickland v. Washington* and its progeny set a high bar for a criminal defendant to establish that counsel's performance was deficient. *See Strickland,* 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks and citation omitted)); *accord Matylinsky v. Budge,* 577 F.3d 1083, 1090-91 (9th Cir.2009). The Objection is overruled.

**CONCLUSION**

Accordingly, after conducting a de novo review of the record, which included reading the entire record and the transcript of the trial,

**IT IS ORDERED** that the Court **ADOPTS** the thorough, complete and well-considered Report and Recommendation (Doc. 157) in its entirety. The Objections (Docs. 163, 164) raised by the Defendant are **OVERRULED**. Petitioner's Motion to Reconsider (Doc. 168) is **DENIED** as moot based on this Order.

**IT IS FURTHER ORDERED** that the Court has determined, without need for additional argument, to **DENY** the Certificate of Appealability. Rule 11, Rules Governing Section 2254 Cases. The Court has considered

specific issues that serve to satisfy the showing required by 28 U.S.C. §2253(c)(2), and finds none present in this case.

IT IS FURTHER ORDERED that the Amended Petition for Writ of Habeas Corpus is **DENIED** and this action is **DISMISSED**. A Final Judgment shall enter separately. This case is closed.

DATED this 21st day of July, 2011.

David C. Bury
United States District Judge